## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

DOROTHY ROGERS,

     *Plaintiff*,

*v.*                                                    CASE NO. 13-CV-13746

CAROLYN W. COLVIN                      DISTRICT JUDGE STEPHEN J. MURPHY III
Acting Commissioner of Social          MAGISTRATE JUDGE PATRICIA T. MORRIS
Security,

     *Defendant*.

_____/

### MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION[1]

### I.    RECOMMENDATION

In light of the entire record in this case, I suggest that substantial evidence supports the Commissioner's determination that Plaintiff is not disabled. Accordingly, **IT IS RECOMMENDED** that Plaintiff's Motion for Summary Judgment be **DENIED**, that Defendant's Motion for Summary Judgment be **GRANTED**, and that the findings of the Commissioner be **AFFIRMED**.

### II.    REPORT

#### A.    Introduction and Procedural History

Pursuant to 28 U.S.C. § 636(b)(1)(B), E.D. Mich. LR 72.1(b)(3), and by Notice of Reference, this case was referred to the undersigned for the purpose of reviewing the

---

[1] The format and style of this Report and Recommendation are intended to comply with the requirements of the E-Government Act of 2002, Pub. L. 107-347, 116 Stat. 2899 (Dec. 17, 2002), Fed. R. Civ. P. 5.2(c)(2)(B), E.D. Mich. Administrative Order 07-AO-030, and guidance promulgated by the Administrative Office of the United States Courts found at: http://www.uscourts.gov/RulesAndPolicies/JudiciaryPrivacyPolicy/March2008RevisedPolicy.aspx. This Report and Recommendation only addresses the matters at issue in this case and is not intended for publication in an official reporter or to serve as precedent.

Commissioner's decision denying Plaintiff's claims for Disability Insurance Benefits ("DIB") AND Supplemental Security Income ("SSI") benefits. This matter is currently before the Court on cross-motions for summary judgment. (Docs. 11, 15.)

Plaintiff Dorothy Rodgers was fifty-nine years old at the time of the most recent administrative hearing. (Transcript, Doc. 9 at 61.) Plaintiff's past work includes jobs as a kit maker in a factory for two years, a linen sorter in a dry cleaning business for seven years, a mail sorter for two years, and a medical assistant for one year. (Tr. at 255.) On January 18, 2011, Plaintiff filed the present claims for DIB and SSI benefits. (Tr. at 204, 211.) Plaintiff alleged she became disabled on December 31, 2005. (*Id.*)

The claims were denied at the initial administrative stage. (Tr. at 151, 152.) In denying Plaintiff's claims, the Commissioner considered hepatitis and affective disorders. (*Id.*) On March 30, 2012, Plaintiff appeared before Administrative Law Judge ("ALJ") Ethel Revels, who considered the application for benefits de novo. (Tr. at 31-50, 51-112.) In a decision dated May 21, 2012, the ALJ found that Plaintiff was not disabled. (Tr. at 46.) Plaintiff requested a review of this decision on June 4, 2012. (Tr. at 15-16.)

The ALJ's decision became the Commissioner's final decision, *see Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 543-44 (6th Cir. 2004), on July 18, 2013, when the Appeals Council denied Plaintiff's request for review. (Tr. at 1-6.) On September 3, 2013, Plaintiff filed the instant suit seeking judicial review of the Commissioner's unfavorable decision. (Doc. 1.)

### B.    Standard of Review

The Social Security system has a two-tiered structure in which the administrative agency handles claims and the judiciary merely reviews the factual determinations to ensure they are

supported by substantial evidence. 42 U.S.C. § 405(g); *Richardson v. Perales*, 402 U.S. 389, 390 (1971). The administrative process provides multiple opportunities for reviewing the state agency's initial determination. The Plaintiff can first appeal the decision to the Social Security Agency, then to an ALJ, and finally to the Appeals Council. *Bowen v. Yuckert*, 482 U.S. 137, 142 (1987). Once this administrative process is complete, an unsuccessful claimant may file an action in federal district court. *Sullivan v. Zebley*, 493 U.S. 521, 524-28 (1990), *superseded by statute on other grounds*, Personal Responsibility and Work Opportunity Reconciliation Act of 1996, Pub. L. No. 104-193, 110 Stat. 2105; *Mullen v. Bowen*, 800 F.2d 535, 537 (6th Cir. 1986) (en banc).

This Court has original jurisdiction under 42 U.S.C. § 405(g) to review the Commissioner's final administrative decision. The statute limits the scope of judicial review, requiring the Court to "'affirm the Commissioner's conclusions absent a determination that the Commissioner has failed to apply the correct legal standards or has made findings of fact unsupported by substantial evidence in the record.'" *Longworth v. Comm'r of Soc. Sec.*, 402 F.3d 591, 595 (6th Cir. 2005) (quoting *Warner v. Comm'r of Soc. Sec.*, 375 F.3d 387, 390 (6th Cir. 2004)); *see also Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 528 (6th Cir. 1997). The court's review of the decision for substantial evidence does not permit it to "'try the case *de novo*, resolve conflicts in evidence, or decide questions of credibility.'" *Ulman v. Comm'r of Soc. Sec.*, 693 F.3d 709, 713 (6th Cir. 2012) (quoting *Bass v. McMahon*, 499 F.3d 506, 509 (6th Cir. 2007)); *see also Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984).

The Commissioner's findings of fact are conclusive if supported by substantial evidence. 42 U.S.C. § 405(g). Therefore, a court may not reverse the Commissioner's decision merely because it disagrees or because "'there exists in the record substantial evidence to support a

different conclusion.'" *McClanahan v. Comm'r of Soc. Sec.*, 474 F.3d 830, 833 (6th Cir. 2006) (quoting *Buxton v. Halter*, 246 F.3d 762, 772 (6th Cir. 2001)); *see also Mullen*, 800 F.2d at 545. The court can only review the record before the ALJ. *Bass*, 499 F.3d at 512-13; *Foster v. Halter*, 279 F.3d 348, 357 (6th Cir. 2001). Substantial evidence is "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994); *see also Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 475 (6th Cir. 2003). "[T]he . . . standard is met if a 'reasonable mind might accept the relevant evidence as adequate to support a conclusion.'" *Longworth*, 402 F.3d at 595 (quoting *Warner*, 375 F.3d at 390). "The substantial evidence standard presupposes that there is a '"zone of choice"' within which the Commissioner may proceed without interference from the courts." *Felisky v. Bowen*, 35 F.3d 1027, 1035 (6th Cir. 1994) (citations omitted) (quoting *Mullen*, 800 F.2d at 545).

A court's review of the Commissioner's factual findings for substantial evidence must consider the evidence in the record as a whole, including that evidence which might subtract from its weight. *Wyatt v. Sec'y of Health & Human Servs.*, 974 F.2d 680, 683 (6th Cir. 1992). "Both the court of appeals and the district court may look to any evidence in the record, regardless of whether it has been cited by the Appeals Council." *Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 535 (6th Cir. 2001). There is no requirement, however, that either the ALJ or the reviewing court discuss every piece of evidence in the administrative record. *Van Der Maas v. Comm'r of Soc. Sec.*, 198 F. App'x 521, 526 (6th Cir. 2006); *Kornecky v. Comm'r of Soc. Sec.*, 167 F. App'x 496, 508 (6th Cir. 2006) ("'[A]n ALJ can consider all the evidence without directly addressing in his written

decision every piece of evidence submitted by a party.'" (quoting *Loral Defense Systems-Akron v. N.L.R.B.*, 200 F.3d 436, 453 (6th Cir. 1999))).

### C.   Governing Law

"'The burden lies with the claimant to prove that she is disabled.'" *Ferguson v. Comm'r of Soc. Sec.*, 628 F.3d 269, 275 (6th Cir. 2010) (quoting *Foster*, 279 F.3d at 353); *accord Boyes v. Sec'y of Health & Human Servs.*, 46 F.3d 510, 512 (6th Cir. 1994)). There are several benefits programs under the Act, including the DIB program of Title II, 42 U.S.C. § 401-34, and the Supplemental Security Income ("SSI") program of Title XVI, 42 U.S.C. § 1381-1385. Title II benefits are available to qualifying wage earners who become disabled prior to the expiration of their insured status; Title XVI benefits are available to poverty stricken adults and children who become disabled. F. Bloch, *Federal Disability Law and Practice* § 1.1 (1984). While the two programs have different eligibility requirements, "DIB and SSI are available only for those who have a 'disability.'" *Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007). "Disability" means inability

> to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than [twelve] months.

42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A) (DIB); 20 C.F.R. § 416.905(a) (SSI).

The Commissioner's regulations provide that disability is to be determined through the application of a five-step sequential analysis:

> Step One:  If the claimant is currently engaged in substantial gainful activity, benefits are denied without further analysis.

Step Two:  If the claimant does not have a severe impairment or combination of impairments that "significantly limits . . . physical or mental ability to do basic work activities," benefits are denied without further analysis.

Step Three:  If the claimant is not performing substantial gainful activity, has a severe impairment that is expected to last for at least twelve months, and the severe impairment meets or equals one of the impairments listed in the regulations, the claimant is conclusively presumed to be disabled regardless of age, education or work experience.

Step Four:  If the claimant is able to perform his or her past relevant work, benefits are denied without further analysis.

Step Five:  Even if the claimant is unable to perform his or her past relevant work, if other work exists in the national economy that plaintiff can perform, in view of his or her age, education, and work experience, benefits are denied.

20 C.F.R. §§ 404.1520, 416.920; *see also Heston*, 245 F.3d at 534. "If the Commissioner makes a dispositive finding at any point in the five-step process, the review terminates." *Colvin*, 475 F.3d at 730.

"Through step four, the claimant bears the burden of proving the existence and severity of limitations caused by her impairments and the fact that she is precluded from performing her past relevant work." *Jones*, 336 F.3d at 474; *see also Cruse v. Comm'r of Soc. Sec.*, 502 F.3d 532, 540 (6th Cir. 2007). The burden transfers to the Commissioner if the analysis reaches the fifth step without a finding that the claimant is not disabled. *Combs v. Comm'r of Soc. Sec.*, 459 F.3d 640, 643 (6th Cir. 2006). At the fifth step, the Commissioner is required to show that "other jobs in significant numbers exist in the national economy that [the claimant] could perform given her RFC [residual functional capacity] and considering relevant vocational factors." *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007) (citing 20 C.F.R. §§ 416.920(a)(4)(v), (g)).

### D.    ALJ Findings

The ALJ applied the Commissioner's five-step disability analysis to Plaintiff's claim and found at step one that Plaintiff met the insured status requirements through December 31, 2010, and that Plaintiff had not engaged in substantial gainful activity since June 21, 2009, the amended alleged onset date. (Tr. at 36.) At step two, the ALJ concluded that Plaintiff had the following severe impairments: "hepatitis C, depression, osteoporosis, high blood pressure, tendonitis-elbow, and substance addiction." (*Id.*) At step three, the ALJ found that Plaintiff's combination of impairments did not meet or equal one of the listings in the regulations. (Tr. at 37.) At step four, the ALJ found that Plaintiff was able to perform her past relevant work as a hand packager (kit maker). (Tr. at 45-46.) Alternatively, at step five, the ALJ found that Plaintiff could perform a limited range of sedentary work in jobs existing in significant numbers in the regional economy. (Tr. at 39-45.)

### E.    Administrative Record

The medical evidence of record indicates that Plaintiff contracted hepatitis C in 1999 due to intravenous heroin abuse. (Tr. at 353.) Plaintiff was treated for depression, cannabis abuse, and alcohol abuse, and her psychiatric medications were reviewed periodically from 2008 to 2010. (Tr. at 325-49.) It was consistently noted that Plaintiff was alert, her speech was coherent and logical and her mood was stable. (*Id.*) On November 1, 2010, Plaintiff "refused or withdrew from services." (Tr. at 350.)

An abdominal ultrasound taken on November 12, 2008, showed "[i]ncreased echogenity to the liver, consistent with hepatic steatosis or hepatocellular disease." (Tr. at 413.) On February 13, 2009, a CT guided liver biopsy was performed which showed moderate activity and some

fibrous expansion "without septa." (Tr. at 411-12, 415-18, 440-41, 448-52.) After examining the test results, it was noted that Plaintiff had "minimal scar tissue in [her] liver." (Tr. at 446.)

Chest x-rays taken on May 13, 2009, were normal. (Tr. at 410, 439.) A bone density test performed on May 18, 2009, showed osteoporosis. (Tr. at 388.) On June 8, 2009, x-rays of Plaintiff's lumbar spine showed "[m]ild disc and facet degenerative changes in the lower lumbar spine, with no acute fracture or subluxation." (Tr. at 437.)

Plaintiff presented to a Detroit Campus Clinic on January 20, 2010 for a follow-up examination regarding her hepatitis C and testing. (Tr. at 320-24.) The "stress ECG was negative for ischemia[,]" "[t]here was no diagnostic evidence for left ventricular regional wall motion abnormalities at peak stress" and "[t]here was no diagnostic evidence for stress-induced ischemia." (Tr. at 322.)

Plaintiff was prescribed physical therapy for lumbar pain in June 2010 (Tr. at 419.) There is no evidence that she followed through and participated in any therapy sessions.

On June 25, 2010, an ultrasound was taken of Plaintiff's abdomen which was normal other than "[m]ildly increased echogenicity of the liver with focal sparing in the gallbladder fossa compatible with hepatic steatosis" and "[c]holelithiasis without evidence for cholecystitis." (Tr. at 436, 552.)

On May 16, 2011, radiographs of Plaintiff's left and right knees were "[u]nremarkable." (Tr. at 478, 480.)

Plaintiff was examined, at the request of Disability Determination Services ("DDS"), by Dr. Cynthia Shelby-Lane, M.D., on May 18, 2011. (Tr. at 420-27.) Dr. Shelby-Lane diagnosed

Hepatitis C, depression, osteoporosis and hypertension, noting that her hypertension was "under good control" and that she was on medication for depression and osteoporosis. (Tr. at 422.)

Plaintiff was also examined, at the request of DDS, by Dr. Nick Boneff, Ph.D., for mental health issues on May 18, 2011. (Tr. at 429-33.) Dr. Boneff diagnosed cannabis and alcohol abuse, and depression, NOS, gave a "fair" prognosis, and assessed a GAF score of 53. (Tr. at 432-33.) Dr. Boneff summarized

> Based on today's exam, the claimant demonstrated strengths in concentration as evidenced by performance on calculational tasks, and variability in terms of abstract thinking and judgment. She displayed slight to moderate strengths in immediate memory and the capacity to pay attention as well as short-term memory. She would appear capable of engaging in simple work-type activities, remembering and executing a two or three step repetitive procedure on a sustained basis, insofar as her physical condition allows.

(Tr. at 433.)

On January 6, 2012, Dr. Felix Valbuena completed a medical source statement of ability to do work-related activities. (Tr. at 483-85.) Dr. Valbuena opined that Plaintiff could occasionally lift less than 10 pounds for less than one hour, that she could frequently lift less than 10 pounds for less than one hour, that she could stand or walk for less than two hours in an eight-hour workday, that her ability to sit was affected by her impairment but he did not indicate how long Plaintiff would be able to sit in an eight-hour workday. (Tr. at 483-84.) Dr. Valbuena listed Plaintiff's history of "mild degenerative disc space narrowing" as the medical basis/clinical findings for his conclusions. (Tr. at 484.)

On March 17, 2012, Dr. Frank Vasey completed a medical source statement wherein he opined that Plaintiff could occasionally lift 10 pounds, stand or walk for less than two hours in an eight-hour workday, could sit less than six hours in an eight-hour workday. Dr. Vasey did not

provide any medical or clinical findings to support his conclusions in the area of the form dedicated to such information. (Tr. at 558.)

In her adult function report, Plaintiff stated that she can only stand for 15-20 minutes at a time, cannot lift items over 15 pounds, that she can walk for a block at a time, that her legs hurt when she goes up and down stairs, that she does stretching exercises until she cannot bear the pain, and that she uses an exercise bike. (Tr. at 287, 292.) Plaintiff indicates that she has no problem with personal care, that she cooks meals that "take about 30 minutes" to an hour, that she folds laundry for 30 minutes at a time, that she is not able to do yard work, that she walks and uses public transportation but never learned how to drive a car, and that she is "afraid to go out alone because of stray dogs [because she] can't run." (Tr. at 288-90.) Plaintiff also stated that she shops in stores for about 45 minutes at a time, she enjoys reading and doing word-find puzzles, and that she attends church. (Tr. at 290-92.)

At the hearing, Plaintiff testified that her pain is 8-9 out of 10 on an average day and that she has 3-4 bad days each week so she cannot work, even as a kit maker. (Tr. at 79-80.) The ALJ asked the VE to assume an individual with Plaintiff's background

> [who] needs work that is simple, repetitive task, which I am using to describe unskilled work. That work must not require any frequent climbing of stairs or squatting and no climbing of ropes, scaffolds, or ladders.

(Tr. at 103.) The VE responded that such a person would be able to perform all of Plaintiff's past work. (Tr. at 104.) When the ALJ added the condition that the work "does not require frequent, overhead reaching with the left, non-dominant" arm, the VE indicated that such a limitation would not change the conclusion. (Tr. at 104-05.) If the limitation involved the right dominant arm, the VE stated that such a limitation would "slow you down" but "can't say that that would be work

preclusive. I don't think it's going to make a difference." (Tr. at 105.) When the ALJ added no frequent use of the hands, the VE testified that such a limitation would "eliminate almost all of the jobs that I gave you earlier, and it would eliminate the past, relevant work." (Tr. at 105-06.) The VE clarified that there are 500 ampule sealer sedentary jobs available in Southeastern Michigan. (Tr. at 108, 110-11.)

### F.    Analysis and Conclusions

### 1.    Legal Standards

"No findings of fact or decision of the Commissioner of Social Security shall be reviewed by any person, tribunal, or governmental agency except as herein provided . . . ." 42 U.S.C. § 405(h). As a result, a claimant's subsequent application for benefits may be barred by the doctrine of *res judicata*, where the Commissioner has made a final decision or determination on the claimant's rights to benefits based upon the same facts and issues. 20 C.F.R. § 404.957(c)(1).

In this circuit, if a claimant does not appeal an adverse disability determination, nondisability as of the date of decision is established as a matter of *res judicata. Carver v. Sec'y of Health & Human Servs.*, 869 F.2d 289 (6th Cir. 1989); *Wills v. Sec'y of Health & Human Servs.*, 802 F.2d 870, 871 n.2 (6th Cir. 1986); *Gibson v. Sec'y of Health & Human Servs.*, 678 F.2d 653, 654 (6th Cir. 1982); *see also Spaulding v. Comm'r of Soc. Sec.*, No. 08-5447, 2009 WL 361397 (6th Cir. Feb. 12, 2009). Therefore, ALJ Manico's decision, which was dismissed and which was not appealed, is *res judicata* as to the issue of whether Plaintiff was disabled as of January 21, 2009, the date of ALJ Manico's decision. (Tr. at 123.)

The ALJ found that Plaintiff could return to her past relevant work as a hand packager (kit maker). (Tr. at 45-46.) The Commissioner's regulations state that the agency "will first compare

11

our assessment of your residual functional capacity with the physical and mental demands of your past relevant work." 20 C.F.R. § 416.960(b); 20 C.F.R. §404.1560(b). "If you can still do this kind of work, we will find that you are not disabled." 20 C.F.R. § 404.1520(f); 20 C.F.R. § 404.1560(b)(3). "'By referring to the claimant's ability to perform a "kind" of work, [the regulations] concentrate[] on the claimant's capacity to perform a type of activity rather than his ability to return to a specific job or to find one exactly like it.'" *Boucher v. Apfel*, No. 99-1906, 2000 WL 1769520, at *7 (6th Cir. Nov. 15, 2000) (quoting *Pass v. Chater*, 65 F.3d 1200, 1204 (4th Cir. 1995)).

An "ALJ [is] not required to solicit testimony from a [vocational expert ("VE")] in reaching his conclusion" that a plaintiff is able to perform her past relevant work. *Wright-Hines v. Comm'r of Soc. Sec.*, 597 F.3d 392, 395 (6th Cir. 2010) (citing 20 C.F.R. § 404.1560(b)(2) ("We *may* use the service of vocational experts . . . to help us determine whether you can do your past relevant work . . . ."); *Griffeth v. Comm'r of Soc. Sec.*, 217 F. App'x 425, 429 (6th Cir. 2007) ("The regulations permit an ALJ to use the services of a vocational expert at step four to determine whether a claimant can do his past relevant work . . . ."). Should the ALJ use the services of a VE, the ALJ need only incorporate those limitations into the hypothetical question that he finds credible and supported by the record. *Casey v. Sec'y of Health and Human Servs.*, 987 F.2d 1230, 1235 (6th Cir. 1993).

Alternatively, at step five, the ALJ found that Plaintiff could perform a limited range of sedentary work in jobs existing in significant numbers in the regional economy. (Tr. at 39-45.) Sedentary work involves lifting no more than ten pounds at a time and occasionally lifting and carrying articles like docket files, ledgers and small tools. Although a sedentary job is defined as

one that involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met. 20 C.F.R. § 404.1567(a) (1991). Social Security Ruling 83-10 clarifies this definition:

> "Occasionally" means occurring from very little up to one-third of the time. Since being on one's feet is required "occasionally" at the sedentary level of exertion, periods of standing or walking should generally total no more than about 2 hours of an 8-hour workday, and sitting should generally total approximately 6 hours of an 8-hour workday. Work processes in specific jobs will dictate how often and how long a person will need to be on his or her feet to obtain or return small articles.

SSR 83-10, 1983 WL 31251, at *5.

After review of the record, I suggest that the ALJ utilized the proper legal standard in his application of the Commissioner's five-step disability analysis to Plaintiff's claim. I turn next to the consideration of whether substantial evidence supports the ALJ's decision.

### 2.     Substantial Evidence

If the Commissioner's decision applied the correct legal standards and is supported by substantial evidence, the decision must be affirmed even if this Court would have decided the matter differently and even where substantial evidence supports the opposite conclusion. 42 U.S.C. § 405(g); *McClanahan*, 474 F.3d at 833; *Mullen*, 800 F.2d at 545. In other words, where substantial evidence supports the ALJ's decision, it must be upheld.

Plaintiff argues that the ALJ "did not follow AR 98-4(6) in utilizing res judicata to adopt the findings made in an earlier Administrative Law Judge decision" because Plaintiff presented "new and material evidence" but the ALJ found the "new medical conditions were not severe" (Doc. 11 at 15-17,) that the ALJ "fail[ed] to give the proper weight to the evidence presented by two treating physicians and ma[de] an erroneous finding relating to residual functional capacity"

13

(Doc. 11 at 17-20), that the ALJ's RFC determination "was made in violation of 20 CFR 416.929(c) and was inconsistent with the vocational expert testimony which supports a finding of disabled" (Doc. 11 at 20-23), and that Plaintiff should be given benefits because "March of 2013 [] is the fifteen year anniversary of her employment as a kit maker/hand packager." (Doc. 11 at 23.)

###### a.    *Res judicata*

In the Sixth Circuit, a prior decision by the Commissioner can preclude relitigation in subsequent cases:

> When adjudicating a subsequent disability claim with an unadjudicated period arising under the same title of the Act as the prior claim, adjudicators must adopt such a finding from the final decision by an ALJ or the Appeals Council on the prior claim in determining whether the claimant is disabled with respect to the unadjudicated period unless there is new and material evidence relating to such a finding or there has been a change in the law, regulations or rulings affecting the finding or the method for arriving at the finding.

Acquiescence Ruling ("AR") 98-4(6), 63 Fed. Reg. 29771, 29773 (June 1, 1998) (acquiescing to *Drummond v. Comm'r of Soc. Sec.*, 126 F.3d 837 (6th Cir. 1997)). This ruling, resulting from the Sixth Circuit's decision in *Drummond*, essentially creates a presumption that the facts found in a prior ruling remain in a subsequent unadjudicated period unless "there is new and material evidence" on the finding. *See Makinson v. Colvin*, No. 5:12CV2643, 2013 WL 4012773, at *5 (N.D. Ohio Aug. 6, 2013) (adopting Report & Recommendation) ("[U]nder *Drummond* and AR 98-4(6), a change in the period of disability alleged does not preclude the application of *res judicata*.") (citing *Click v. Comm'r of Soc. Sec.*, No. 07-13521, 2009 WL 136890, at *4 (E.D. Mich. Jan. 16, 2009))); *cf. Randolph v. Astrue*, 291 F. App'x 979, 981 (11th Cir. 2008) (characterizing the Sixth Circuit's rule as creating a presumption); *Chavez v. Bowen*, 844 F.2d 691, 693 (9th Cir. 1988) ("The claimant, in order to overcome the presumption of continuing

nondisability arising from the first administrative law judge's findings of nondisability, must prove 'changed circumstances' indicating a greater disability." (quoting *Taylor v. Heckler*, 765 F.2d 872, 875 (9th Cir. 1985))).

The salient issue in this case is whether substantial evidence supports the ALJ's decision to adopt the findings of the previous ALJ based on his findings that there was no new evidence or changed circumstances under A.R. 98-4(6) and *Drummond v. Comm'r of Soc. Sec.*, 126 F.3d 837 (6th Cir. 1997). (Tr. at 38.)  If so, then the findings of the previous ALJ were properly adopted and are unassailable. Plaintiff proffers evidence of "bilateral acromioclavicular pain and lumbar degenerative disc disease" (Doc. 11 at 17-18) as sufficiently new and material evidence to avoid application of the *res judicata* doctrine. Although there was some evidence of "[m]ild disc and facet degenerative changes in the lower lumbar spine," there was no evidence that these changes alone or in combination with the acromioclavicular pain were disabling. (Tr. at 437.) I therefore suggest that substantial evidence supports the ALJ's findings that even if the evidence was new, it was not material and thus, would not preclude application of *res judicata*.

## b.   Treating Sources

Plaintiff contends that the ALJ failed to give proper weight to the opinions of Drs. Valbuena and Vasey. (Doc. 11 at 20.) Opinions of treating physicians receive controlling weight if they are "well-supported by medically acceptable clinical and laboratory diagnostic techniques" and are "not inconsistent with the other substantial evidence in [the] case record." *Id.* §§ 404.1527(d)(2), 416.927(d)(2); *see also Wilson*, 378 F.3d at 544. The only opinions entitled to dispositive effect are those dealing with the nature and severity of the claimant's impairments. 20 C.F.R. §§ 404.1527(d), 416.927(d); SSR 96-2p, 1996 WL 374188, at *1-2. Therefore, the ALJ does not owe

a treating opinion deference on matters reserved to the Commissioner. 20 C.F.R. §§ 404.1527(d), 416.927(d); SSR 96-2p, 1996 WL 374188, at *1-2. The ALJ "will not give any special significance to the source of an opinion[, including treating sources]," regarding whether a person is disabled or unable to work, whether an impairment meets or equals a Listing, the individual's residual functional capacity ("RFC"),[2] and the application of vocational factors. 20 C.F.R. §§ 404.1527(d)(3), 416.927(d)(3).

The regulations mandate that the ALJ provide "good reasons" in the written determination for the weight assigned to the treating source's opinion. 20 C.F.R. § 404.1527(c)(2); *see also Smith v. Comm'r of Soc. Sec.*, 482 F.3d 873, 875 (6th Cir. 2007). Therefore, a decision denying benefits

> must contain specific reasons for the weight given to the treating source's medical opinion, supported by the evidence in the case record, and must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's opinion and the reasons for that weight.

SSR 96-2p, 1996 WL 374188, at *5 (1996); *see also Rogers*, 486 F.3d at 242. "This requirement is not simply a formality; it is to safeguard the claimant's procedural rights." *Cole v. Astrue*, 661 F.3d 931, 937 (6th Cir. 2011). "[A] failure to follow the procedural requirement of identifying the reasons for discounting the opinions and for explaining precisely how those reasons affected the weight accorded the opinions denotes a lack of substantial evidence, even where the conclusion of the ALJ may be justified based upon the record." *Rogers*, 486 F.3d at 243.

---

[2] The Commissioner's power to determine the claimant's RFC is less capacious than it appears at first. While the ALJ determines the RFC, the ALJ might be required to give controlling weight to treating source opinions on specific limitations. *See* 20 C.F.R. §§ 404.1513(b)-(c), 416.913(b)-(c) (describing that medical reports can include a source's "statement about what [the claimant] can still do despite [her] impairments"). These opinions would necessarily affect the RFC. *See Green-Young v. Barnhart*, 335 F.3d 99, 106-07 (2d Cir. 2003) (holding that treating physician's opinion that claimant could not sit or stand for definite periods "should have been accorded controlling weight").

16

Determining whether a physician is a treating source is a fact-intensive inquiry. "Acceptable medical sources" qualify as treating sources only if they are "licensed physicians" or "licensed or certified psychologists." 20 C.F.R. § 404.1513(a)(1)-(2); *see also* SSR 06-03p, 2006 WL 2329939, at *1-2. Additionally, to become a treating source, the relationship between the physician and claimant must have been "ongoing." 20 C.F.R. § 404.1502. That is, treatments or evaluations must have occurred "with a frequency consistent with accepted medical practice for the type of treatment and/or evaluation required for [the] medical condition(s)." *Id.* Infrequent consultations or a brief period of treatment often preclude a source from this category. *See, e.g.*, *Smith*, 482 F.3d at 876 (finding that two physicians who each treated claimant once were not treating sources).

In the Sixth Circuit, "more than one examination is required to attain treating-physician status." *Pethers v. Comm'r of Soc. Sec.*, 580 F. Supp. 2d 572, 579 n.16 (W.D. Mich. 2008); *see also Hoskins v. Comm'r of Soc. Sec.*, 106 F. App'x 412, 414-15 (6th Cir. 2004) (treating a claimant only once is insufficient for treating status); *Barker v. Shalala*, 40 F.3d 789, 794 (6th Cir. 1994) (same); *Atterberry v. Sec. of Health & Human Servs.*, 871 F.2d 567, 571 (6th Cir. 1989) (same). Moreover, "depending on the circumstances and nature of the alleged condition, two to three visits often will not suffice for an ongoing treatment relationship." *Kornecky*, 167 F. App'x at 506; *see also Helm v. Comm'r of Soc. Sec.*, 405 F. App'x 997, 1001 n.3 (6th Circ. 2011) ("[I]t is questionable whether a physician who examines a patient only three times over a four-month period is a treating source."). Finally, a physician the claimant consults only to obtain a report for her disability claim is not a treating source. 20 C.F.R. § 404.1502.

In the instant case, the ALJ considered the appropriate factors and sufficiently stated his reasoning for giving the opinions of Drs. Valbuena and Vasey less than controlling weight. (Tr. at 42-44.) As to Dr. Valbuena, I first note that he did not opine how long Plaintiff would be able to sit in an eight-hour workday. (Tr. at 484.) Therefore, the ALJ's finding that Plaintiff could return to her past work or sedentary work is not directly contradicted by Dr. Valbuena's opinion. In addition, Dr. Valbuena's reference to "mild degenerative disc space narrowing" fails to come any where near to accounting for the severe limitations he found in virtually every category of function and is inconsistent with other substantial evidence of record. (Tr. at 483-84.) I therefore suggest that the ALJ's decision not to accord Dr. Valbuena's opinion controlling weight was supported by substantial evidence. §§ 404.1527(d)(2), 416.927(d)(2); *see also Wilson*, 378 F.3d at 544.

As to Dr. Vasey, his opinion did not provide any medical or clinical findings to support his conclusions in the area of the form dedicated to such information. (Tr. at 558.) I therefore find that his opinion was properly discounted as completely unsupported and inconsistent with other medical evidence of record. *Id.* In addition, as the ALJ noted, it is unclear whether Dr. Vasey qualifies as a treating physician since the medical records do not identify him as a provider of care to Plaintiff. *Kornecky*, 167 F. App'x at 506.

### c.   RFC and Psychiatric Impairments

The ALJ did not ignore the effects of the combined impairments and symptoms. First, the ALJ stated he followed 20 C.F.R. § 416.945 and SSR 96-8p, each mandating that the RFC reflect both severe and non-severe impairments. (Tr. at 39.) More importantly, the only psychiatric opinion of record belies Plaintiff's argument that psychiatric limitations would affect Plaintiff's

RFC. Dr. Boneff found that Plaintiff had "strengths in concentration" and "the capacity to pay attention as well as short-term memory." (Tr. at 433.) Dr. Boneff therefore concluded that Plaintiff was "capable of engaging in simple work-type activities, remembering and executing a two or three step repetitive procedure on a sustained basis . . . ." (*Id.*) I therefore suggest that the ALJ's RFC was supported by substantial evidence with respect to all her impairments, including psychiatric.

### d.    Fifteen Year Limitation

Finally, Plaintiff contends that since March of 2013 marks the fifteen year anniversary of Plaintiff's work as a kit maker, it cannot be considered past relevant work. (Doc, 11 at 23-24.) As noted by Defendant, this Court's review is limited to the ALJ's decision entered on May 21, 2012, so any argument regarding a time period beyond the date of the ALJ's decision is outside the scope of this Court's review. (Doc. 15 at 25-26.) Under 20 C.F.R. § 404.1560(b)(1), past relevant work is "work that you have done within the past 15 years, that was substantial gainful activity, and that lasted long enough for you to learn to do it." As long as the past relevant work was performed within 15 years of the date last insured or the date of the adjudication, it falls within the definition of past relevant work. *Cf., Moreno v. Colvin*, No. 10-cv-403-TUC-AWT, 2013 WL 3805664, at *5 (D. Ariz. July 22, 2013)(finding that work as fast food cook was performed more than 15 years prior to date last insured or date of adjudication and therefore did not fall within definition of past relevant work). I therefore suggest that this contention does not undermine the ALJ's decision.

### 3.    Conclusion

For all these reasons, after review of the record, I suggest that the decision of the ALJ, which ultimately became the final decision of the Commissioner, is within that "'zone of choice'

within which decisionmakers may go either way without interference from the courts," *Felisky*, 35 F.3d at 1035 (quoting *Mullen*, 800 F.2d at 545), as the decision is supported by substantial evidence.

## III.    <u>REVIEW</u>

Pursuant to Rule 72(b)(2) of the Federal Rules of Civil Procedure, "[w]ithin 14 days after being served with a copy of the recommended disposition, a party may serve and file specific written objections to the proposed findings and recommendations. A party may respond to another party's objections within 14 days after being served with a copy." Fed. R. Civ. P. 72(b)(2); *see also* 28 U.S.C. § 636(b)(1). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140, 106 S. Ct. 466, 88 L. Ed.2d 435 (1985); *Howard v. Sec'y of Health & Human Servs.*, 932 F.2d 505 (6th Cir. 1991); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981). The parties are advised that making some objections, but failing to raise others, will not preserve all the objections a party may have to this Report and Recommendation. *Willis v. Sec'y of Health & Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this magistrate judge.

Any objections must be labeled as "Objection No. 1," "Objection No. 2," etc. Any objection must recite precisely the provision of this Report and Recommendation to which it pertains. Not later than 14 days after service of an objection, the opposing party may file a concise response proportionate to the objections in length and complexity. Fed. R. Civ. P. 72(b)(2); E.D. Mich. LR 72.1(d). The response must specifically address each issue raised in the objections, in the same order, and labeled as "Response to Objection No. 1," "Response to Objection No. 2," etc.

If the Court determines that any objections are without merit, it may rule without awaiting the response.

Date:  October 20, 2014                    /S PATRICIA T. MORRIS
                                           Patricia T. Morris
                                           United States Magistrate Judge

## CERTIFICATION

I hereby certify that this Report and Recommendation was electronically filed this date using the Court's CM/ECF system which delivers a copy to all counsel of record.

Date:  October 20, 2014             By    s/Jean L. Broucek
                                          Case Manager to Magistrate Judge Morris