UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

DOROTHY M. RODGERS,

    Plaintiff,

v.

COMMISSIONER OF SOCIAL
SECURITY,

    Defendant.
                                 /

Case No. 13-cv-13746

HONORABLE STEPHEN J. MURPHY, III

**ORDER ADOPTING REPORT AND
RECOMMENDATION** (document no. 17), **OVERRULING
PLAINTIFF'S OBJECTIONS** (document no. 18), **GRANTING
COMMISSIONER'S MOTION FOR SUMMARY JUDGMENT** (document no. 15),
**AND DENYING RODGERS' MOTION FOR SUMMARY JUDGMENT** (document no. 11)

      Plaintiff Dorothy Rodgers claims to suffer from hepatitis C, osteoporosis, high blood pressure, depression, obesity, substance abuse, and spinal issues. She first sought Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") benefits on October 24, 2006. The Social Security Commissioner denied her application in 2009. Rodgers filed the present claim for DIB and SSI in January of 2011. An Administrative Law Judge ("ALJ") held a hearing before determining once more that Rodgers was not disabled. The Social Security Appeals Council denied Rodgers' request for review, and she then appealed the Commissioner's decision to this Court. The Court referred the matter to a United States Magistrate Judge, and the parties filed cross motions for summary judgment. On October 20, 2014, the magistrate issued a Report and Recommendation, advising the Court to grant the Commissioner's summary judgment motion and dismiss the case. Rodgers filed a timely objection.

**BACKGROUND**

The ALJ found Rodgers not disabled within the meaning of the Social Security Act, 42 U.S.C. § 423(d)(1)(A). She applied the familiar five step sequential analysis provided by the Commissioner's regulations. 20 C.F.R. § 404.1520(a)(4). First, she found that Rodgers had not engaged in substantial employment since the alleged onset date. Tr. 36, ECF No. 9-2. Second, she determined that Rodgers' impairments were "severe within the meaning of the Regulations because they cause more than minimal limitation in claimant's ability to perform basic work activities." *Id.* at 37. Third, she ruled that Rodgers did not have an impairment that equaled in severity a listed impairment under the Regulations. *Id.* at 37–38. Next, the ALJ determined Rodgers' residual functional capacity ("RFC"). She began by explaining that the previous ALJ's finding in 2009 was binding unless Rodgers could put forth new and material evidence of a recent change in condition. *Id.* at 39. For reasons examined in greater detail below, the ALJ found "only a minimal change in claimant's condition since the prior decision and that the substantial evidence of record supports the aforementioned residual functional capacity." *Id.* Thus, similar to the previous ALJ's RFC determination in 2009, she found Rodgers could do some unskilled sedentary work. *Id.* She then explained that Rodgers could perform her prior work as a hand packager. *Id.* at 45. Accordingly, the ALJ found Rodgers not disabled within the meaning of the Act and denied her application.

**STANDARD OF REVIEW**

A claimant may appeal a Social Security Administration decision to a United States district court. 42 U.S.C. § 405(g). The district court's review, however, "is limited to determining whether the Commissioner's decision is supported by substantial evidence and

was made pursuant to proper legal standards." *Grayheart v. Comm. of Soc. Sec.*, 710 F.3d 365, 374 (6th Cir. 2013) (citations omitted). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* (citations omitted). A reviewing court will affirm the Commissioner's decision "if it is based on substantial evidence, even if substantial evidence would also have supported the opposite conclusion. *Id.* (citations omitted). Nonetheless, an "ALJ's failure to follow agency rules and regulations denotes a lack of substantial evidence, even where the conclusion of the ALJ may be justified based on the record." *Id.* (citations omitted).

## DISCUSSION

Rodgers raises two objections to the Commissioner's denial of her SSI and DIB petition. She argues her condition had substantially deteriorated since 2009, and the ALJ therefore erred in adopting the previous residual functional capacity determination. And she contends the ALJ's conclusion that she has moderate difficulties with concentration, persistence, or pace, precludes her from her prior employment as a hand packager.

I.  The ALJ's Residual Functional Capacity
    <u>Determination Was Supported By Substantial Evidence</u>

The ALJ found Rodgers could perform sedentary work that did not involve climbing, walking up stairs, squatting, or frequent overhead reaching. Tr. 39, ECF No. 9-2. Furthermore, the job's functions must be limited to simple, repetitive tasks. *Id.*

Rodgers claims the ALJ erred by adopting the RFC determination from the 2009 proceeding. Objection 1, ECF No. 18. At the outset, the Court notes the ALJ did not actually adopt the 2009 RFC. In the 2009 proceeding, the ALJ found Rodgers "has the residual functional capacity to perform the full range of sedentary work . . . except climbing." Tr. 120, ECF No. 9-3. In the present case, by contrast, the ALJ also found that

3

Rodgers could not walk up stairs, squat, frequently lift her arms above her head, or do anything other than simple, repetitive tasks. *Id.* at 39, ECF No. 9-2. Thus, Rodgers' RFC was more restricted here than in 2009.[1]

In any event, the ALJ's RFC determination is supported by substantial evidence. First, the ALJ examined different ways that Rodgers could effectively function. She noted that Rodgers had no problem attending to her personal care, which included "dressing, bathing, caring for hair, shaving, feeding self, and using the toilet." *Id.* at 40. Furthermore, Rodgers reported being able to stand "for 15 to 20 minutes, lift up to 15 pounds, and walk one block" as well as occasionally use a bike for exercise. *Id.* Moreover, Rodgers' activities demonstrated she was social and relatively well functioning. For example, she could use public transportation, shop, pay her bills, handle a savings account, and regularly volunteer through her church. *Id.* Such evidence of Rodgers' routine supported the ALJ's RFC determination.

Second, the ALJ noted Rodgers' health problems had either not changed since 2009, or were being treated. For example, although Rodgers has long suffered from hepatitis C, the "medical record does not indicate there has been a significant change in claimant's condition since the previous decision." *Id.* A recent liver biopsy revealed only minimal fibrosis. *Id.* And the "treatment notes do not contain any reports of fatigue, nausea, vomiting, swelling, fluid retention, jaundice, or dark urine." *Id.* Furthermore, when Rodgers "was compliant with taking her blood pressure medication, her hypertension was assessed

---

[1] The Court understands that the ALJ did explicitly state: "There is no new and additional evidence or changed circumstances to provide a basis for a different finding of the claimant's residual functional capacity from that in the 2009 decision." Tr. 38, ECF No. 9-2. Why she then went on to impose a more restrictive RFC is not completely clear. But the more restrictive RFC was beneficial to Rodgers.

4

as controlled." *Id.* at 41. Thus, many of Rodgers' ailments were either stable or effectively being treated.

Third, the ALJ found Rodgers' descriptions of her ailments not credible or supported by medical evidence. Notably, "an ALJ's credibility determinations about the claimant are to be given great weight, particularly since the ALJ is charged with observing the claimant's demeanor and credibility." *Cruse v. Comm. of Soc. Sec.*, 502 F.3d 532, 542 (6th Cir. 2007) (internal quotation marks omitted). Here, the ALJ noted that Rodgers provided "varying information regarding her tobacco, drug, and alcohol use, the nature and intensity of symptoms, functional abilities, and compliance with recommended treatment." *Tr.* at 44, ECF N. 9-2. Furthermore, there were "significant gaps in treatment and the failure to pursue recommended treatment." *Tr.* at 44–45. Inconsistencies and the failure to follow through with treatment programs undermined Rodgers' credibility.

Rodgers' descriptions of her ailments were not supported by medical evidence. *See Cruse,* 502 F.3d at 543. Examinations "consistently revealed no joint swelling of the shoulder, hands, wrist, elbows, knees, ankles, or feet" as well as full range of motion and no neurological problems. *Tr.* at 41, ECF No. 9-2. And a physician noted in 2009 that although Rodgers had some osteoarthrosis, "it would not cause the level of pain reported by claimant." *Id.*

Rodgers contends the ALJ "effectively ignored degenerative spinal conditions and disc space narrowing and extremity impairment." Objection 1, ECF No. 18. The ALJ's decision, however, explained that x-rays of the spine "revealed mild disc and facet degenerative changes in the lower lumbar spine" but "were interpreted by the physician as 'unremarkable.'" Tr. 41, ECF No. 9-2. Furthermore, after Rodgers completed treatment for

her lower back pain, the "therapist noted claimant had full lumbar spine range of motion and all treatment goals had been met." *Id.*

The ALJ found the reports submitted by Dr. Valbuena and Dr. Visey, upon which Rodgers bases her argument, unpersuasive. Neither doctors' conclusions were supported by objective medical evidence. *Id.* at 42. Indeed, the conclusions appeared to "reflect claimant's subjective reports," and were inconsistent with the doctors' own treatment notes indicating Rodgers "has very little or no functional limitations with regard to the neck, back, and legs." *Id.* at 43. Furthermore, the ALJ did not think either doctor qualified as a treating physician under the regulations because the record did not reflect how many times the doctors had evaluated Rodgers. *Id.* The Court must uphold the ALJ's RFC determination because it was supported by substantial evidence.

II. The ALJ's Conclusion That A Moderate Impairment In Cognitive Function Did Not Preclude Rodgers From <u>Working At Previous Job Was Supported By Substantial Evidence</u>

Rodgers next argues that the cognitive deficiencies identified by the ALJ precluded her from working as a hand packager. In support she notes the ALJ stated Rodgers had "moderate difficulties" with regard to concentration, persistence or pace. *Id.* at 38. Rodgers further states that the vocational expert reported a worker needed to be on task 95% of the time to be employable. *Id.* at 107. Because a person with moderate concentration problems is not likely to be on-task 95% of the time, Rodgers argues the ALJ erred in finding her capable of working at her past job as a hand packager.

Rodgers' argument, however, takes the ALJ's statement about Rodgers' moderate difficulties out of context. Immediately following her statement, the ALJ explained that Rodgers reads and completes word puzzles, and her husband reported she "pays attention

6

very well, completes tasks, and follows instructions 'pretty good.'" *Id.* at 38. Furthermore, a physician "noted that claimant demonstrated strength in concentration and slight to moderate strengths in immediate and short-term memory and paying attention." *Id.* The doctor "concluded claimant was capable of engaging in simple work-type activities on a sustained basis." *Id.* Indeed, the ALJ found Rodgers' ability to focus and concentrate "minimally limited" and capable of simple routine work. This finding is consistent with the vocational expert's statement that she would need to stay on-task to be employable. Accordingly, the Court will overrule Rodgers' second objection to the Commissioner's denial of her petition.

### ORDER

**WHEREFORE**, it is hereby **ORDERED** that the Report and Recommendation (document no. 17) is **ADOPTED**.

**IT IS FURTHER ORDERED** that Rodgers' Objections (document no. 18) are **OVERRULED**.

**IT IS FURTHER ORDERED** that the Commissioner's Motion for Summary Judgment (document no. 15) is **GRANTED**.

**IT IS FURTHER ORDERED** that Rodgers' Motion for Summary Judgment (document no. 11) is **DENIED**.

**ACCORDINGLY,** the case is **DISMISSED WITH PREJUDICE**.

**SO ORDERED**.

s/Stephen J. Murphy, III
STEPHEN J. MURPHY, III
United States District Judge

Dated: November 20, 2014

I hereby certify that a copy of the foregoing document was served upon the parties and/or counsel of record on November 20, 2014, by electronic and/or ordinary mail.

                                            s/Carol Cohron
                                            Case Manager